IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MATTHEW CHARLES CARDINALE,   :
   :
   :
   Plaintiff,   :
   :
v.   :
   :
CITY OF ATLANTA,   :   CIVIL ACTION NO.
   :   1:20-cv-01077-AT
   :
   Defendants.   :

## **ORDER AND OPINION**

This matter is before the Court on the following motions:

(1)   Plaintiff's Motion to Remand to State Court Due to Defects in the Notice of Removal; or, in the alternative Motion to Remand All State Claims to State Court Pursuant to 28 U.S.C. 1441(c)(2) [Doc. 5] ("Motion to Remand");

(2)   Defendant City of Atlanta's Motion for Plaintiff to Abide by the Rules of Professional Conduct, Or in the Alternative Motion to Enjoin Plaintiff from Contacting the Defendant Regarding the Issues Pending in this Litigation, and to Stay This Matter Until City Hall Reopens from the Covid-19 Pandemic, and for Any Other Relief That the Court Sees Fit to Impose [Doc. 25] ("Motion to Cease Contact");

(3)    Plaintiff's Motion for Leave to File Surreply [Doc. 50] in Opposition to the Motion to Cease Contact; and

(4)    Plaintiff's Motion to Deem as Admitted by Defendant City of Atlanta Several Facts Alleged in Plaintiff's Original Complaint, Pursuant to Rule 8(B)(6) [Doc. 13]; and the Amended Motion to Deem Admitted [Doc. 60].

(5)    Plaintiff's Rule 11(C)(2) Motion for Sanctions against Defendant City of Atlanta for Unwarranted and Unreasonable Denials in Defendant's Answer and First Amended Answer to Plaintiff's First Amended Complaint [Doc. 24].").

An amicus brief was filed by Former State Senator Vincent Fort and several other Atlanta-area activists in opposition to the Motion to Cease Contact. (Doc. 34.)

## I.    Motion to Remand

This case was originally filed in the Superior Court of Fulton County on February 7, 2020, and was hand served by Plaintiff that same day. (Doc. 1-1 at 2, 6.) The original complaint raised three counts against "Defendant City of Atlanta's 'Policy' banning members of the public from identifying oneself as a candidate during public comment." (Compl., Doc. 1-1 at 20 (the "Policy"): (1) an as applied challenge under the First Amendment, (2) a facial challenge to the Policy under the First Amendment, and (3) a challenge to the Policy under the Charter and Code of Ordinances of the City of Atlanta. (*See generally* Compl.,

Doc. 1-1.)  Plaintiff amended his Complaint in state court on February 10, 2020, adding a number of additional counts. (Am. Compl. Doc. 3-2) Two were related to the Policy: (4)[1] a declaratory judgment that there is no Policy; (5) a declaratory judgment that if there is a Policy, it is unconstitutionally vague. (*Id.*) Two additional counts were against the City, but not explicitly related to the Policy: (6) a claim alleging violations of the Georgia Open Meetings Act ("GOMA"); and (7) & (8), claims for violation of the Georgia Open Records Act ("GORA") stemming from a February 8, 2020 records request ((6)–(8) collectively, "the GOMA and GORA Claims").

Defendant City of Atlanta filed a Notice of Removal removing  the case to this Court on March 9, 2020 on the basis that Plaintiff asserted claims subject to the Court's federal question jurisdiction. (Doc. 1) The City attached the Original Complaint to the Notice of Removal, but not the Amended Complaint, which was provided in a supplement two days later (Doc. 3-2). Plaintiff argues that this matter should be remanded for two reasons: (1) the City failed to strictly comply with the removal procedures under 28 U.S.C. § 1446, and (2) this Court lacks supplemental jurisdiction as to the GOMA and GORA claims.

Turning to the first reason, Plaintiff argues that remand is warranted because Defendant failed to attach "a copy of all process, pleadings, and orders served upon such defendant or defendants in such action" as required under 28

---

[1] The Court continues numbering from the previous list of counts, as the Amended Complaint mistakenly contained two 'count fives.'

U.S.C. § 1446(a). Specifically, Plaintiff contends, and the City admits, Plaintiff's Amended Complaint was filed and served on the City in state court, but not included with the notice of removal. The Amended Complaint was not provided to the Court as a supplement until March 11, 2020, 2 days after the Notice of Removal was filed, and 33 days from the date of receipt of the original Complaint by Defendant which triggered the initial removal deadline.[2]

As noted above, 28 U.S.C. 1446(a) provides that:

> A defendant or defendants desiring to remove any civil action from a State court *shall file* in the district court of the United States for the district and division within which such action is pending *a notice of removal* signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal, *together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action*.

(emphasis added). The consequences for failing to comply with the emphasized aspect of the removal statute have been the subject of a number of appeals court decisions in this circuit.

In *Covington v. Indemnity Ins. Co.*, 251 F.2d 930, 932–33 (5th Cir. 1958),[3] the Fifth Circuit held that failing to attach a state court record to a notice of removal was "completely without effect upon the removal," explaining that if

---

[2] The City asserts that although it provided the supplement to Plaintiff and the Court's Courtroom Deputy on March 11, it was unable to file the supplement until March 12, 2020, apparently as a result of the case initiation procedure. (Doc. 3.) For the purpose of the Motion to Remand, it does not matter exactly what day it was filed, as all parties agree it was after the 30-day deadline.

[3] In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981)(en banc), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

documents were omitted, "they may be later supplied." 251 F.2d 930, 933. The court noted that the removal statute even permits the district court to direct the removing party to file copies of state court records and proceedings with the district court clerk under 28 U.S.C. § 1447(b). *Id.* Indeed, a district court is empowered by that statute to bypass the removing party entirely and issue a writ of certiorari directly to the state court to deliver the certified record. 28 U.S.C. § 1447(b).

The Eleventh Circuit reiterated the holding in *Covington* in *Stephens v. State Farm Fire & Cas. Co.*, 149 F. App'x 908, 910 (11th Cir. 2005). *Stephens* held that a failure to include all documents from the state court record does not defeat removal where a defendant files "its initial notice of removal . . . within thirty days of receiving service of . . . [the] complaint" and where the "documents had no bearing on the district court's jurisdiction. *Id.* (citing *Covington*, 251 F.2d at 932–33). In later opinions, the Eleventh Circuit expressly clarified that "the failure to include all state court pleadings and process with the notice of removal is procedurally incorrect but is not a jurisdictional defect," relying on the Fifth Circuit's decision in *Covington. Cook v. Randolph Cty.*, Ga., 573 F.3d 1143, 1150 (11th Cir. 2009) (citing *Covington*, 251 F.2d 930, 933 (5th Cir.1958); *Usatorres v. Marina Mercante Nicaraguenses, S.A.*, 768 F.2d 1285, 1286 (11th Cir.1985); 14C Wright, Miller & Cooper, Fed. Practice and Procedure § 3733 (2008) ("The failure to conform to these procedural rules is not a jurisdictional defect, and both the

failure to file all the state court papers or to provide the Rule 11 signature are curable in the federal court if there is a motion to remand.")).

Plaintiff argues that *Stephens* is unpublished, and because it only involved the omission of a single page and an exhibit, it is distinguishable from this case which involves an entire operative pleading.[4]  Moreover, Plaintiff attempts to distinguish *Covington* based on two similar decisions from the Northern District of Alabama.  *Andalusia Enterprises, Inc. v. Evanston Ins. Co.,* 487 F. Supp. 2d 1290, 1300 (N.D. Ala. 2007) (Acker, J.); *Kisor v. Collins*, 338 F. Supp. 2d 1279, 1281 (N.D. Ala. 2004) (Acker, J.).

In *Kisor*, Judge Acker granted a motion to remand on the basis of failure to include all state court records served on the Defendant with the notice of removal. 338 F. Supp. 2d at 1281. He distinguished *Covington* on the basis that the plaintiff in that case waived the right to seek remand based on a non-jurisdictional defect by not filing a timely motion to remand. *Id*. Plaintiff contends that, like the plaintiff in *Kisor*, he did not waive the City's removal defect, because he timely filed a motion to remand.

However, Judge Acker's attempt to distinguish *Covington* was severely criticized by a judge of this court in *Mattox v. U.S. Bank Nat'l Ass'n*, No. 2:11-CV-

---

[4] Plaintiff argues that the Court should factor the City's intent or willfulness behind omitting the Amended Complaint into its determination of whether to remand, relying on out-of-circuit district court cases. *Yellow Transp., Inc. v. Apex Digital, Inc.*, 406 F. Supp. 2d 1213, 1219 (D. Kan. 2005); *Christenson Media Grp., Inc. v. Lang Indus., Inc.*, 782 F. Supp. 2d 1213 (D. Kan. 2011). Even if the removal statutes permitted such an inquiry, the Court finds that the City's prompt supplementation shows that any omission was not in bad faith.

00244-WCO, 2012 WL 13018481, at *3 n.7 (N.D. Ga. Mar. 12, 2012) (finding that *Kisor* "unconvincingly attempts to distinguish binding precedent from the Fifth Circuit and is contradicted by persuasive authority from the Eleventh Circuit.") Judge O'Kelley criticized *Kisor* for three reasons. First, Judge O'Kelley noted that *Kisor*'s distinctions regarding the timeliness of the motion to remand "distinguishes binding precedent on the basis of a fact that may or may not have existed. The motion to remand in *Convington may* have been filed [timely] . . . . or it may not have been. The opinion simply does not say." *Id.* Second, he reasoned that *"Kisor* contradicts the unequivocal reasoning of *Covington*," as that case held that a failure to include required documents with the notice of removal was "completely without effect upon the removal," and therefore appeared to leave no room for the possibility that a case could be remanded for failing to include the documents if the right facts were presented. *Id.* (quoting *Covington*, 251 F.2d at 933) (internal quotations omitted). Third, he found Judge Acker's reasoning to be "expressly contradicted by *Stephens*," which he found to be the more persuasive authority. Judge O'Kelley did not see it as a close question:

> Both *Covington* and *Stephens* squarely hold that a removing defendant's failure to file all copies of the process, pleadings, and orders served upon that defendant does not necessitate remand. Instead, "the failure to file papers required by the removal statute may be remedied" after removal.

*Id.* (quoting *Usatorres,* 768 F.2d at 1286).

7

The Court agrees. First, the Court is bound by the Fifth Circuit's decision in *Covington*, and is not convinced that either Plaintiff or the *Kisor* court persuasively distinguished it for the reasons Judge O'Kelley gave. *Covington* did not appear to leave any room for remand on the basis of failing to supply state court records. Second, the statutory authority of the Court to direct the removing party or the state court to supplement the record with omitted state court documents strongly indicates that Congress intended that the omission of state court records be remedied by supplementation, rather than remand. Finally, the omitted Amended Complaint, which added only two state law claims, "had no bearing on the district court's jurisdiction" on removal based on Plaintiff's First Amendment claims, bringing this case in line with *Stephens*.  149 F. App'x at 910. Consequently, the Court will not remand the entire case based on the omission of the Amended Complaint.

The Court turns next to the second basis for remand, lack of supplemental jurisdiction over Plaintiff's GOMA and GORA Claims. The Defendant, as the removing party, bears the burden of establishing this Court's subject matter jurisdiction. *Gaitor v. Peninsular & Occidental S. S. Co.*, 287 F.2d 252, 253 (5th Cir. 1961). The City's two-paragraph response to Plaintiff's alternative motion to sever and remand the GOMA and GORA Claims failed to substantively respond to the alternative motion. Accordingly, the City has failed to meet its burden of showing supplemental jurisdiction as to the GOMA and GORA Claims. The Court

will **GRANT** the alternative motion to sever and remand the Georgia Open Meetings Act and Georgia Open Records Act claims pursuant to 11 U.S.C. § 1441(c)(2) by separate order. The Motion to Remand is otherwise **DENIED** in all other respects.

## II.   Motion to Cease Contact

Next, Defendant seeks an order prohibiting Plaintiff from directly contacting represented parties to this litigation about the litigation. The City identified several examples of contacts at issue, including emails to City Council members, the City's Transparency Officer, and City Attorneys.[5]  It appears that the parties have had a number of Facebook interactions as well. In support of its motion, the City cites Georgia Rule of Professional Conduct 4.2(a), which states:

> A lawyer who is representing a client in a matter shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or court order.

Ga. R.P.C. 4.2(a). The City acknowledges that Rule 4.2 by its own terms applies only to lawyers; this Court's Local Rule applying the Georgia Rules of Professional Conduct to proceedings before the Court likewise only applies to lawyers. LR 83.1(C), NDGa. Nonetheless, Defendant contends that based on

---

[5] Defendants have also complained about allegedly excessive Georgia Open Records Act (GORA) requests. Defendant cites no authority for the Court to prohibit GORA requests related to this litigation. Indeed, GORA specifically provides for "[r]equests by civil litigants for records that are sought as part of or for use in any ongoing civil or administrative litigation against an agency" O.C.G.A. § 50-18-71(e), so long as counsel is copied on the request.

Plaintiff's legal education[6] and successful litigation history, this Court has inherent power to enter some form of Rule 4.2-like order prohibiting Plaintiff from communicating with represented parties about the subject matter of this lawsuit. (Motion to Cease Contact at 11–12 (citing *Purchasing Power LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1223 (11th Cir. 2017)).

In response, Plaintiff argues that this Court lacks authority to impose the Georgia Rules of Professional Conduct on a non-attorney. In the alternative, Plaintiff argues that Rule 4.2(a) does not prohibit a citizen from contacting their elected officials. Specifically, Plaintiff notes that Rule 4.2 has an exception for communications "authorized . . . by law" and that Comment 1 to the Rule states that "[c]ommunications authorized by law include, for example, the right of a party to a controversy with a government entity to speak with government officials about the matter." Ga. R.P.C. 4.2 cmt 1. Finally, Plaintiff argues that an order prohibiting him from petitioning his elected officials for redress of grievances would run afoul of the First Amendment, and would be an unconstitutional prior restraint on his speech. U.S. Const. Amd. I. Further, Plaintiff argues that the City of Atlanta's Motion to Cease Contact violates the Ga. Const. Art I., Sec. I, ¶ IX and the Bill of Rights of the Charter of the City of Atlanta. Plaintiff also argues that the Motion to Cease Contact is a "SMAPP," or

---

[6] Plaintiff recently graduated from law school. (Motion to Cease Contact at 3 nn. 10, 11.)

strategic motion against public participation, in violation of O.C.G.A. § 9-11-11.1; and contravenes the Georgia Open Records Act, O.C.G.A. § 50-18-70.

Essentially, Plaintiff is arguing that the Court should judge the actions of the City of Atlanta by the above authorities. However, other than the First Amendment, none of these laws have any bearing on whether this Court can regulate contact between parties to a federal court case. Any purported restriction on speech would originate from this Court, not from the City of Atlanta or from the State Bar of Georgia. While the Court agrees with Plaintiff that it is not appropriate to apply Local Rule 83.1(C) or the Georgia Rules of Professional Conduct to a non-lawyer, the Court undoubtedly has the authority and discretion to regulate and manage the conduct of the parties before it, subject to First Amendment constraints.[7] The Court considers these constraints below.

## A.    First Amendment Constraints on Court Orders

The Supreme Court addressed the authority of courts to restrict the extrajudicial speech of trial attorneys in *Gentile v. State Bar of Nevada*, 501 U.S. 1030, (1991). That case approved a prohibition on extrajudicial statements by attorneys which are "substantially likely to have a materially prejudicial effect" on the proceedings. *Id.* at 1033. The Court started from the basic proposition that under Supreme Court precedent, excessive publicity is grounds for a new trial

---

[7] In the event that Plaintiff does become subject to the Georgia Rules of Professional Conduct during the pendency of this litigation, the Court may, on an appropriate subsequent motion, address whether those rules prohibit the contact in question at such time.

where it jeopardizes the right to a fair trial by an impartial jury. *Id.* at 102 (citing *Sheppard v. Maxwell*, 384 U.S. 333, 362 (1966) ("Due process requires that the accused receive a trial by an impartial jury free from outside influences.")). Because a court is not helpless to prevent such an outcome, the Court noted that it has "expressly contemplated that the speech of those participating before the courts could be limited." *Id.* at 1072 (citing *Sheppard*, 384 U.S. at 363). At first glance, the holding in *Gentile* would appear to apply only to attorneys, as the Court specifically noted that "[m]embership in the bar is a privilege burdened with conditions." *Id.* (quoting *In re Rouss*, 116 N.E. 782, 783 (N.Y. 1917) (Cardozo, J.)) (internal quotations omitted). However, the Supreme Court has long recognized that a trial court may "proscribe[] extrajudicial statements by any lawyer, party, witness, or court official which divulged prejudicial matters." *Sheppard*, 384 U.S. at 361. Furthermore, subsequent cases have recognized the ability of courts to regulate the otherwise protected speech of "trial participants" more generally.  *E.g. United States v. Brown*, 218 F.3d 415, 425 (5th Cir. 2000).

The Fifth Circuit's decision in *Brown* involved the prosecution of a politician. *Id.* at 418. The trial court "*sua sponte* entered a gag order that prohibits attorneys, parties, or witnesses from discussing with 'any public communications media' anything about the case 'which could interfere with a fair trial,' including statements 'intended to influence public opinion regarding the merits of this case,' with exceptions for matters of public record and matters such

as assertions of innocence." *Id.* at 418. The gag order was temporarily lifted to permit the defendant to campaign, but a limited order was later put into place to prevent "the parties from releasing recordings (or transcripts of recordings) made prior to the trial . . . [and] any other discoverable material." *Id.* at 419. After the election concluded, the original gag order was reimposed. *Id.* The district court refused the defendant's request to vacate the reimposed gag order, and an appeal to the Fifth Circuit followed.

The Fifth Circuit noted that in *Gentile*, the Supreme Court did not set a floor or ceiling on the standard for issuing 'gag orders,' but merely approved the "substantial likelihood" standard. *Id.* at 426–27. The court recognized the existence of a circuit split; some courts had permitted a gag order based only on a "reasonable likelihood" of prejudice. *Id.*[8] The Fifth Circuit, like the Supreme Court, ducked the issue, likewise assuming that substantial likelihood was sufficient. *Id.* at 427. The court also acknowledged that *Gentile* involved attorneys, but found the rationale for restricting the speech of trial participants to apply equally, explaining that the "mischief that might have been visited upon the three related trials — primarily, jury tainting — would have been the same whether prejudicial comments had been uttered by the parties or their lawyers." *Id.* at 428. Thus, in a case "where lawyers and parties have each demonstrated a

---

[8] The Fifth Circuit noted that some circuits had adopted standards even more stringent than the substantial likelihood standard approved in *Gentile*, but assumed those cases were abrogated by *Gentile. Id.* at 427.

'substantial likelihood' of making prejudicial comments outside the courtroom," the court found no basis "to distinguish between the two groups for the purpose of evaluating a gag order directed at them both." *Id.* The Fifth Circuit thus upheld the order.

The Eleventh Circuit does not appear to have adopted a standard for entering orders restricting the speech of trial participants. This Court's Local Rule governing special orders restricting extrajudicial statements is set forth below:

> In a widely publicized or sensational civil case, the Court, on motion of either party or on its own motion, may issue a special order governing such matters as extra-judicial statements by parties and witnesses likely to interfere with the rights of the parties or the rights of the accused to a fair trial by an impartial jury; the seating and conduct in the courtroom of spectators and news media representatives; the management and sequestration of jurors and witnesses; and any other matters which the Court may deem appropriate for inclusion in such an order.

LR 83.4(B), NDGa.   The Local Rule does not distinguish between "reasonable likelihood" or "substantial likelihood," but does only apply to "widely publicized" or "sensational" civil cases.

Another area where case management and the First Amendment have interacted is in discovery. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 27 (1984). In *Rhinehart*, the trial court entered "a protective order covering all information obtained through the discovery process that pertained to" information about a foundation's members and donors. *Id.* "The order prohibited petitioners from

publishing, disseminating, or using the information in any way except where necessary to prepare for and try the case. By its terms, the order did not apply to information gained by means other than the discovery process." *Id.* The court justified this restriction as "necessary to avoid the 'chilling effect' that dissemination would have on 'a party's willingness to bring his case to court." *Id.*

The Supreme Court began its analysis by noting that "petitioners gained the information they wish to disseminate only by virtue of the trial court's discovery processes" and that the rules authorizing discovery were "a matter of legislative grace," not a right. *Id* at 32. Thus, restricting dissemination of discovery material did not raise the same "specter of government censorship." *Id.* Furthermore, pretrial discovery material was not part of the "public components of a civil trial," and thus not subject to the traditional common law right of access. *Id.* at 33. Finally, because the order allowed dissemination of information obtained other than through discovery, the order did not fit the mold of a classic prior restraint requiring strict scrutiny. *Id.* at 33–34.

Applying intermediate scrutiny, the Court held that "Rule 26(c) furthers a substantial governmental interest unrelated to the suppression of expression" — preventing abuse of discovery. *Id.* at 34 (citing *Procunier v. Martinez*, 416 U.S. 396, 413 (1974), *overruled on other grounds*, *Thornburgh v. Abbott*, 490 U.S. 401, 413 (1989)). The Court explained that liberal discovery provisions carry a "potential for abuse," which includes "matters of delay and expense"  as well as

"privacy interests of litigants and third parties." *Id.* at 34–35. The Court also recognized that "[t]he trial court is in the best position to weigh fairly the competing needs and interests of parties affected by discovery," leaving to the trial court the responsibility of fashioning an order limiting expression to an extent "no greater than is necessary or essential to the protection of the particular governmental interest involved" based on the individual circumstances of each case. *Id.* at 32 (quoting *Procunier*, 416 U.S. at 413 (internal quotations omitted)).

Finally, the Court returns to Model Rule of Professional Conduct 4.2. The Parties agree that several courts and state bar ethics committees, as well as the American Bar Association's Standing Committee on Ethics and Professional Responsibility ("ABA") itself, have recognized the tension between Model Rule of Professional Conduct 4.2 and the First Amendment. *E.g.*, *Communication with Government Agency Represented by Counsel*, ABA Formal Op. 97-408 (1997); *see also* Scott L. Sternberg, *Contrasting Professional Conduct Rule 4.2 with the First Amendment Right to Petition*, 62 La. B.J. 94, 97 (2014), *available at* https://bhbmlaw.com/wp-content/uploads/2014/09/SLS-Journal-Feature2-AugSept2014.pdf (noting that "[s]everal states have codified their stance on the matter"). While neither Model Rule 4.2 nor its Georgia counterpart govern the Court's analysis, the recognition by these authorities of the First Amendment constraints on Rule 4.2 are probative of the constitutional limits of this Court's authority to regulate the speech of parties before it.

In Formal Op. 97-408, the ABA "agree[d] that the no-contact rule [in Rule 4.2] must not be applied so as to frustrate a citizen's right to petition, exercised by direct communication with government decision makers." *Id.* (pin cites omitted) Quoting a New York bar committee opinion, the ABA wrote that "government lawyers should not be able to block all access to government officials to the point of interfering with the right to petition for redress, [but] neither should attorneys [for private parties] be allowed to approach uncounselled public officials who may not know exactly what cases are pending against them, the status of those cases, the consequences of those cases, or the consequences their statements may have in those cases." *Id.* (quoting Ass'n of the Bar of the City of N.Y., Comm. on Professional Ethics Op. 1991-4 at 5 (1991)).

The ABA endorsed a balancing approach. For a lawyer to make unconsented contact with a government official, first it must be an official with "authority to take or recommend action in the controversy, and the sole purpose of the communication must be to address a policy issue, including settling the controversy." *Id.* Second, "the lawyer for the private party must always give government counsel advance notice that it intends to communicate with officials of the agency to afford such officials an opportunity to discuss with government counsel the advisability of entertaining the communication." *Id.*

### B.     The City's Requested Restrictions

The City has advocated for a form of the ABA's balancing approach. (Reply in Supp't Motion to Cease Contact at 15 (requesting the Court order "Plaintiff to only contact officials with "authority to take or recommend action in the controversy" about "policy issues" after providing reasonable advance notice to counsel for the City affording counsel time to advise its clients regarding the communication")). However, the City has failed to identify any purported prejudice, other than annoyance and the fact that the communications distract city officials from dealing with the COVID-19 crisis.[9] The City expressed concern about uncounseled admissions by City employees, but points to no examples of any prejudicial statements procured by Plaintiff and offered in this case. Even if the City could offer examples of uncounseled admissions, a non-prior-restraint remedy exists for excluding unfairly prejudicial admissions: the Federal Rules of Evidence. *See* Fed. R. Evid. 403 (excluding otherwise relevant evidence where its

---

[9] The City contends that "Plaintiff, by his own words, is executing a strategic plan to make those in his path 'suffer.'" (Mot. to Cease Contact at 14.) The statement by Plaintiff cited by the City is reproduced in context below:

> I also believe the Council should be aware of all issues involving resolution of matters involving public comment, also part of my litigation.  It is the City's decision to break the law over and over again; and it is the City's decision to resolve its problems in Court.  In short, if I have to suffer through litigation with your horrible Law Department, then so do you.

(Mot. to Cease Contact Ex. U, Email conversation between Antonio Brown and Matthew Charles Cardinale dated Apr. 2, 2020, Doc. 25-1 at 99.) While not the most diplomatic choice of words, the Court does not agree that this conversation, in context, evidences prejudicial conduct necessitating prior restraint of speech going forward, or even bad faith which would subject Plaintiff to non-prior-restraint sanctions under this Court's inherent power.

"probative value is substantially outweighed by a danger of . . . unfair prejudice"). Importantly, the City has not alleged that Plaintiff is criminally harassing or threatening employees or city council members outside of their work roles or has engaged in or is likely to engage in witness tampering or intimidation or simply other truly harassing behavior, which would rise to the level of prejudicial conduct. In the absence of prejudice, there is no basis to enter the City's requested relief. Furthermore, the City's requested relief is not subject to the looser standard in *Rhinehart*, because Plaintiff's right to petition the government for grievances does not arise from the discovery rules, but from the Constitution itself. 467 U.S. at 27; U.S. Const. 1st Am. Unlike a party served with a discovery response, city employees are free to disregard any direct individual questioning from Plaintiff about or in connection this litigation, *except* to the extent that some other state or city law requires a response.[10] Counsel for the City is free to advise all City employees accordingly.

In the meantime, Plaintiff is free to document all conversations with City employees to avoid a later dispute about what was said. The City in turn is free to serve a request for production for all documentation of any such communications. And Plaintiff is under an ongoing duty to promptly supplement any response to such discovery with later documented conversations.

---

[10] The Court does not hold one way or another whether any such law, including GORA, requires any response from City officials, as that is not within the scope of the claims not remanded.

Accordingly, the Motion to Cease Contact is **DENIED**.[11]

## III.   Motions to Deem Admitted

On March 24, 2020, Plaintiff filed a Motion to Deem Admitted, seeking an order declaring that several facts alleged in his Original Complaint were deemed admitted as a matter of law based on the City's alleged failure to properly plead responsively in violation of Rule 8(b)(6).[12] The City filed an Amended Answer on April 6, 2020 (Doc. 19), and then filed a Response to the Motion to Deem Admitted arguing that the motion was now moot as a result of its amended pleading. (Doc. 20). Plaintiff disagrees, arguing that he "should still be entitled to rely on judicially admitted facts contained in any responsive pleading on the record," and that it "would be nonsensical for Plaintiff to accrue a right to rely on certain facts on March 09, 2020 with the filing of Def.'s initial Answer (Document 2); and then lose it on the sixteenth of March, a week later, with the filing of Def.'s Answer to Pl.'s Amended Complaint (Document 7)." (Doc. 22 at 4.) Plaintiff does not cite a single case in support of his theory of judicial admissions as vested legal rights.

---

[11] The City's alternative request to stay this action in light of the COVID-19 pandemic is also **DENIED**. The Court has already entered an Order in this matter providing an extra 30 days of discovery (Doc. 8) and the Chief Judge has entered a number of General Orders designed to address the pandemic. (Docs. 11, 18, 37, 51). The Court respects that the pandemic has added mounting additional responsibilities to the City's already busy agenda, but that does not entitle the City to be treated differently from any other litigant. Upon proper motion, the Court will consider extending deadlines as appropriate in light of the needs of the case and pressures associated with COVID-19 or other factors that may properly justify an extension.

[12] On June 5, 2020, Plaintiff filed his First Amended Motion to Deem Admitted, which removed a number of requested admissions as a result of the City's later purported admissions. (Doc. 60.) As the Amended Motion to Deem Admitted still deals exclusively with Plaintiff's Original Complaint, the Court's analysis of the original Motion to Deem Admitted remains unchanged.

Instead, the City is correct that a superseded pleading is no longer operative, and any admissions contained therein are likewise inoperative. As the Fifth Circuit held in *Borel v. U.S. Cas. Co.*, 233 F.2d 385 (5th Cir. 1956):[13]

> The plaintiff's first contention is that he was entitled to go to the jury on the strength of the admission by the defendant in its original answer that he was acting within the scope of his employment at the time he was injured. A superseded pleading is of course not a conclusive admission of the statements made therein, and is not properly considered by a fact-finder unless introduced in evidence.

233 F.2d at 387–88 (citing *Fruco Const. Co. v. McClelland*, 192 F.2d 241 (8th Cir. 1951); *Proctor & Gamble Def. Corp. v. Bean*, 146 F.2d 598 (5th Cir. 1945)). Plaintiff may still "offer[] in evidence the part of the original answer making the admission, and the statement could therefore [be] considered by the jury in reaching a verdict, along with all the other evidence in the case. . . [but] such an admission can be explained or controverted at the trial by the party filing it." *Id.* at 388 (citations omitted); *see also* Wright & Miller, 6 Fed. Prac. & Proc. Civ. § 1476 (3d ed.) ("Similarly, when the complaint is amended defendant should be entitled to amend the answer to meet the contents of the new complaint and, if this is done, any admissions in the initial responsive pleading will be superseded by the amended answer.") Accordingly, the Motion to Deem Admitted is **DENIED AS MOOT**.

---

[13] As noted above, pre-1981 Fifth Circuit cases are binding on this Court. *Bonner*, 661 F.2d at 1209.

## IV.    Motion for Sanctions

Plaintiff has also challenged the sufficiency of the City's denials in its Amended Answer by filing a Motion for Sanctions under Rule 11 based on that Rule's requirement that "the denials of factual contentions [be] warranted on the evidence or, if specifically so identified, [be] reasonably based on belief or a lack of information." Fed. R. Civ. P. 11(b)(4). Plaintiff identifies "three categories of responses" by the City that he alleges warrant sanctions. In the first category, Plaintiff contends that the City affirmatively denied assertions which are in fact true. (Mot. Sanctions at 24 (citing Am. Answer ¶¶ 58, 60).) In the second category, Plaintiff contends that the City failed to address factual assertions which are true. (*Id.* (citing Am. Answer ¶¶ 15, 94, 100).). In the third category, Plaintiff contends that the City denied based on lack knowledge about factual assertions about which the City in fact had knowledge. (*Id.* (citing Am. Answer ¶¶ 9, 10, 41, 42, 43, 52, 55, 71, 93, 101).)

In response, Defendant argues that its responses were appropriate under Rules 8 and 11, and in any case not sanctionable under the Eleventh Circuit's applicable "reasonableness under the circumstances" test, especially taking into account the current pandemic. *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998) ("The objective standard for testing conduct under Rule 11 is 'reasonableness under the circumstances' and 'what was reasonable to believe at the time' the pleading was submitted." (quoting *Aetna Insurance Company v.*

*Meeker*, 953 F.2d 1328, 1331 (11th Cir.1992))). Finally, Defendant contends that "Rule 11 motions should not be made or threatened for minor, inconsequential violations of the standards prescribed by" Rule 11(b)," quoting the advisory committee notes to Rule 11.

Plaintiff, in his reply, does not contest that the reasonableness under the circumstances standard applies to his motion and does not contest Defendant's assertion that minor or inconsequential violations of Rule 11(b) are not subject to sanctions under that rule.

The Court has reviewed each of the challenged denials as set forth by Plaintiff's helpful table. (Doc. 24 at 5.) While perhaps some of the justifications for the denials evince a surfeit of caution,[14] some of Plaintiff's allegations are argumentative[15] or state legal conclusions.[16]  Upon review, the Court finds that all of the challenged denials were either sufficient, or at the very least reasonable under the circumstances. *See Price v. Facility Mgmt. Grp., Inc.*, No. 1:03-CV-

---

[14] (*E.g.*, Resp. to Mot. for Sanctions at 15–16 ("[W]hile the disclosure report may have been filed with the City, the City cannot admit that it knows who filed it"; "The City asserted it lacked sufficient knowledge to admit or deny whether 'Robinson . . . responded to Plaintiff's email. . .' That allegation, on its own, does not provide the City with [information as to] who 'Robinson' is.")

[15] (Am. Compl. ¶ "Pl. has had ongoing grievances with the City about what Pl. says is the City's general lack of enforcement of the signage law . . .), ¶ 55 ("Plaintiff raised numerous concerns regarding the City of Atlanta's lack of due process requirements . . .")). These statements, though couched as factual assertions, are nonetheless argumentative.

[16] (Am. Compl. ¶ 58 (("City Utilities Committee has oversight of the City of Atlanta Department of Public Works, which is responsible for enforcing the City's laws regarding signs in the public right of way."), ¶ 60 ("The Committee on Council has oversight of the Municipal Clerk's Office and of election matters.")). The fact that the truth of the allegation can be readily ascertained by examining an ordinance or that Defense counsel has indicated knowledge of the ordinance does not render the allegation any less a legal conclusion.

3039-JEC, 2005 WL 8154415, at *4 (N.D. Ga. Mar. 3, 2005) ("The mere existence of factual disputes between the parties' recollections of events cannot warrant sanctions."). Accordingly, the Motion for Sanctions will be denied.

Plaintiff has made clear he "has always been interested in the admissions, not the sanctions." (Doc. 45.) It is unnecessary for Plaintiff to bring a sanctions motion simply to obtain admissions. Plaintiffs can test the veracity of the denials by serving Requests for Admission under Rule 36. And, unlike a pleading to which a response is required, a request for admission may seek admission of "facts, the application of law to fact, or opinions about either," so long as it is within the scope of discovery, and an answering party may only "assert lack of knowledge or information as a reason for failing to admit or deny . . . if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny." Fed. R. Civ. P. 36(a)(1)(A), (a)(4). Where there exists a mechanism for Plaintiff to obtain the relief he seeks without resorting to the drastic remedy of sanctions or even involving the Court, a Rule 11 motion is particularly inappropriate.

## V.   Conclusion

For the above reasons it is **ORDERED** that Plaintiff's Motion to Remand to State Court Due to Defects in the Notice of Removal; or, in the alternative Motion to Remand All State Claims to State Court Pursuant to 28 U.S.C. 1441(c)(2) [Doc. 5] is **GRANTED IN PART** as to the GOMA and GORA Claims,

24

and **DENIED IN PART** as the remaining claims. The Court will enter a separate order severing and remanding the GOMA and GORA Claims.

It is **FURTHER ORDERED** that Plaintiff's Motion for Leave to File Surreply [Doc. 50] in Opposition to the Motion to Cease Contact is **GRANTED**. The Motion to Cease Contact [Doc. 25] is **DENIED.**

It is **FURTHER ORDERED** that the Motion to Deem Admitted [Doc. 13] and Amended Motion to Deem Admitted [Doc. 60] are **DENIED AS MOOT**, and the Motion for Sanctions [Doc. 24] is **DENIED**.

The Court  expects the parties to conduct the litigation in a reasonable manner.  This may now be a federal case.  But it should not be an exercise in tit-for-tat misery or conduct that makes litigation personally nasty and over-extended as a norm, even if within the bounds of the First Amendment.

**IT IS SO ORDERED** this 8th day of June, 2020.

**Amy Totenberg**
**United States District Judge**