IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MATTHEW CHARLES CARDINALE,

    Plaintiff,

v.

CITY OF ATLANTA,

    Defendant.

CIVIL ACTION NO.
1:20-cv-1077-AT

## ORDER

In this First Amendment case, Plaintiff Matthew Cardinale challenges Defendant City of Atlanta's ("the City") policy prohibiting speakers from identifying themselves as candidates during City Counsel and Committee meetings. On August 7, 2020, the City of Atlanta filed its Motion for Summary Judgment [Doc. 113]. Mr. Cardinale filed a Motion for Leave to File Surreply [Doc. 126] in connection with Defendant's Motion. Subsequently, on December 8, 2020, Mr. Cardinale filed his own Motion for Summary Judgment [Doc. 145]. For the reasons that follow, Mr. Cardinale's Motion for Leave to File Surreply [Doc. 126] is **GRANTED**, the City's Motion for Summary Judgment [Doc. 113] is **GRANTED**, and Mr. Cardinale's Motion for Summary Judgment [Doc. 145] is **DENIED**.[1]

---

[1] The City of Atlanta also filed a Motion for Hearing [Doc. 132] in connection with its summary judgment motion. Mr. Cardinale opposes the City's Motion for Hearing. (Doc. 133.) In light of

## I.    Background and Procedural History[2]

This case involves a First Amendment challenge to a City of Atlanta policy pertaining to speech at meetings before the Atlanta City Council and its Committees. The City of Atlanta Code of Ordinances allows members of the public to speak at City Council meetings as follows:

> Any member of the public may speak to the council on matters of public concern, including matters of generally policy, efficiency, and the conduct of city government, provided that the president may rule out of order personal, abusive, or indecorous language.

Atlanta, Ga., Code of Ordinances § 2-104. This provision also directs that an individual must sign up to speak in advance of the public comment section of each Council meeting and each person "shall be allowed to speak for a maximum of two minutes." *Id*. § 2-104 (a). In a separate provision, the Code of Ordinances establishes guidelines for public comments made before the City's governing Committees:

> Each standing committee shall hear remarks from the public at its regularly scheduled meetings and at non-regularly scheduled meetings including work sessions, provided that the chairperson may limit receipt of such remarks to legislation pending before such committee; may bar comments pertaining to legislation for which public hearings have been held; may rule out of order personal, abusive, or indecorous language; and may further limit the time allotted to each person to no less than one minute, provided that the chairperson shall provide at least one minute per person prior to the

---

Plaintiff's opposition, the thorough briefing on the issues presented, and the Court's enormous caseload at present, the Court **DENIES** the City's Motion [Doc. 132.]. *See St. James Entm't LLC v. Crofts*, 837 F.Supp.2d 1283, 1287 (N.D. Ga. 2011).

[2] The Parties do not dispute the core facts. Both parties have moved for summary judgment on Mr. Cardinale's First Amendment claims and neither argues that there is a dispute of material fact.  *See U.S. v Oakley*, 744 F.2d 1553, 1555-56 ("[C]ross-motions may be probative of the non-existence of a factual dispute when, as here, they demonstrate a basic agreement concerning what legal theories and material facts are dispositive.")

> committee taking action on the first legislative item appearing on the
> agenda.

Atlanta, Ga., Code of Ordinances § 2-136. In addition to these restrictions, the City prohibits campaigning for public office within City Hall (*see* City Stipulation[3] ("Stip."), Doc. 95 ¶ 2), and therefore prohibits speakers from identifying themselves as candidates during the public comment portion of the City Council and Committee meetings. (*Id.* ¶ 3.) The City also prohibits incumbent members of the City Council from identifying themselves as candidates during the City Council and Committee meetings. (*Id.* ¶ 4.) There is no charter provision, code section, or resolution expressly articulating this policy of prohibiting individuals from disclosing their status as candidates or incumbents. (Plaintiff's Statement of Material Facts ("SOMF"), Doc. 145-1 ¶¶ 7-9; Defendant's Response to SOMF, Doc. 146 ¶¶ 7-9.) In a letter to City Council President Felicia Moore in November of 2019, Mr. Cardinale explained that he was informed by Superintendent of Elections Foris Webb, III that this rule, though not codified, was based on an opinion of the Ethics Office. (Letter to Moore, Doc. 1-1 Ex. B.) However, Mr. Cardinale's efforts to uncover a relevant written opinion of the Ethics Office were unavailing. (*Id.*) Accordingly, it appears that this unwritten "policy" is instead a routine City practice or custom. The Parties agree, however, that this policy exists and that it will likely apply to Mr. Cardinale in the future. (Stip. ¶¶ 3,5,6.)

---

[3] Mr. Cardinale does not dispute any facts stated in the City's Stipulation. (*See* Response to Stipulation, Doc. 99.)

Mr. Cardinale has for years been highly engaged in local civic life in the City of Atlanta. He has on many occasions made public comments before the City Council and various Committees. (Pl. SOMF ¶ 12; Def. Resp. to SOMF ¶ 12.) In 2019, he ran for local office in the Special Election for the Atlanta City Council District 3 position. (*Id.* ¶ 13.) He plans to run for local office again in the future. (Stip. ¶ 5.)

It is in connection with these experiences as a candidate that Mr. Cardinale challenges the City's policy prohibiting him from identifying himself as a candidate during public comment. (Letter to Moore, Doc. 1-1 Ex. B.) Mr. Cardinale does not wish to campaign during these public comments: he merely seeks to raise two particular issues of City governance that affected him directly as a candidate, and to identify himself as a candidate when discussing these two grievances. (*Id.*) First, Mr. Cardinale wishes to identify himself as a candidate in commenting on the City's alleged failure to enforce its public signage ordinance in connection with local campaigns. (Pl. SOMF. ¶ 55.) Plaintiff explains that when he was a candidate for the District 3 position, other candidates regularly placed campaign signs on public property in public rights-of-way in violation of the City Code of Ordinances. (*Id.* ¶¶ 56, 58.) He contends that he was injured, as a candidate, as a result. (*Id.* ¶ 58.) Second, Plaintiff seeks to identify himself as a candidate when addressing the City Council and its Committees regarding the City's alleged lack of due process for candidates facing disqualification from running for local positions. (Pl. SOMF. ¶ 55.) In 2019, Mr. Cardinale was initially disqualified from running for the District

3 position; however, this decision was later reversed by a decision of the Fulton County Superior Court. (Pl. SOMF. ¶¶ 18-19; *see also Cardinale v. Foris Webb, III*, 2019-CV-316797 (Fulton Sup. Ct. Feb. 22, 2019), Doc. 1-1 Ex. A.) Although he was able to run, Mr. Cardinale ultimately lost the election for the District 3 seat. (Pl. SOMF. ¶ 22; Def. Resp. to SOMF ¶ 22.) He therefore wishes to raise complaints and presumably propose changes to the process involved in disqualifying candidates from running for local office. (Letter to Moore, Doc. 1-1 Ex. B.) Mr. Cardinale does not seek to disclose his candidacy in connection with any other issues or for any other reasons.

There is no record evidence and Mr. Cardinale does not contend that the City has prohibited him from making public comments generally. Nor is there any evidence that the City has or intends to prohibit Mr. Cardinale from addressing the Council and its Committees regarding the subject matter of his two grievances. However, the City maintains that he cannot identify himself as a candidate in doing so. But Mr. Cardinale contends that he can only effectively address his grievances regarding currently implemented City policies (related to signage enforcement and candidate disqualification) by referring to his own experience as a candidate.

Plaintiff initiated this action against the City in Fulton County Superior Court on February 7, 2020, and then amended his complaint on February 10, 2020, (Docs. 1-1; 3-2.) The City subsequently removed this action to federal court on March 9, 2020. (Doc. 1.) While the First Amended Complaint alleged eight claims, the Court remanded Counts 6-8 in its June 8, 2020 Order and Opinion.

(Doc. 62.) Counts 1 through 5 remained before the Court. However, in his Response to Defendant's Motion for Summary Judgment, Mr. Cardinale indicates that he "waives Counts Three, Four, and Five of his First Amended Complaint," and only opposes summary judgment on Counts One and Two. (Doc. 116 at 4.) Count One seeks declaratory judgment that the City's policy violates the First Amendment as applied to Mr. Cardinale and Count Two seeks declaratory judgment that the policy facially violates the First Amendment.

## II.   Legal Standard

The Court may grant summary judgment only if the record shows "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is material if resolving the factual issue might change the suit's outcome under the governing law. *Id.* The motion should be granted only if no rational fact finder could return a verdict in favor of the non-moving party. *Id.* at 249.

When ruling on the motion, the Court must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in the non-moving party's favor. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The moving party need not positively disprove the opponent's case; rather, the moving party must establish the lack of

evidentiary support for the non-moving party's position.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  If the moving party meets this initial burden, in order to survive summary judgment, the non-moving party must then present competent evidence beyond the pleadings to show that there is a genuine issue for trial.  *Id.* at 324-26.  The essential question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson*, 477 U.S. at 251-52. Finally, "[s]peculation does not create a *genuine* issue of fact; instead it creates a false issue, the demolition of which is a primary goal of summary judgment." *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) (quoting *Hedberg v. Ind. Bell Tel. Co.*, 47 F.3d 928, 931– 1.) 32 (7th Cir. 1995) (emphasis in original)).

The standard of review for cross-motions for summary judgment does not differ from the standard applied when only one party files a motion, but simply requires a determination of whether either of the parties deserves judgment as a matter of law on the facts that are not disputed.  *Am. Bankers Ins. Group v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005).  The Court must consider each motion on its own merits, resolving all reasonable inferences against the party whose motion is under consideration.  *Id.* The Eleventh Circuit has explained that "[c]ross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed."  *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984).  Cross-motions may, however, be probative of

the absence of a factual dispute where they reflect general agreement by the parties as to the controlling legal theories and material facts. *Id.* at 1555-56.

## III. Discussion

As a preliminary matter, the Court notes that Mr. Cardinale filed a Motion for Leave to File Surreply [Doc. 126] in order to reply to new cases and arguments cited by the City in its reply brief. The City does not oppose Mr. Cardinale's Motion. Accordingly, Plaintiff's Motion [Doc. 126] is **GRANTED**, and the Court will consider the arguments Plaintiff propounds in his surreply brief.

### A. First Amendment Claims

The Parties dispute the appropriate test under which the Court should assess Mr. Cardinale's claims under the First Amendment. The City argues that City Council and Committee meetings are "limited public forums" and thus the City may restrict expressive activity as long as the restriction is (1) viewpoint neutral and (2) reasonable in light of the purposes served by the forum. (City Motion for Summary Judgment ("City Mot."), Doc. 113 at 9-10.) The City contends that the restriction at issue is viewpoint neutral and reasonable. In contrast, Mr. Cardinale argues that the City's policy prohibiting a speaker from identifying himself as a candidate is content-based discrimination and therefore is subject to strict scrutiny under the Supreme Court's decision in *Reed v. Town of Gilbert*, 576 U.S. 155 (2015). Under this heightened standard, Mr. Cardinale asserts that the City's policy does not use the least restrictive means to achieve a compelling government

interest and therefore is unconstitutional. (Pl. Resp. to City Mot., Doc. 117 at 19, 24; Plaintiff's Motion for Summary Judgment ("Pl. Mot."), Doc. 145 at 19-24.)[4]

To "evaluate government restrictions on purely private speech that occurs on government property," courts implement a "forum analysis." *Walker v. Texas Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200, 215 (2015) (citing *Cornelius v. NAACP Legal Defense & Ed. Fund, Inc.*, 473 U.S. 788, 800 (1985)); *Keister v. Bell*, 879 F.3d 1282, 1288 (11th Cir. 2018). "In forum analysis, we identify the type of government forum involved and then apply the test specific to that type of forum in evaluating whether a restriction violates the First Amendment." *Barrett v. Walker County School District*, 872 F.3d 1209, 1224 (11th Cir. 2017). The Supreme Court has referenced "four categories of government fora: the traditional public forum, the designated public forum, the limited public forum, and the nonpublic forum." *Id.* (citing *Walker*, 576 U.S. at 215-16).

"A traditional public forum is government property which has immemorially been held in trust for the use of the public . . . and has been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions." *Keister*, 879 F.3d at 1288 (citing *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983)) (internal quotations omitted). In a traditional public forum – such as a park or a street — a time, place, and manner restriction is only permissible if it is "content neutral, narrowly tailored to achieve

---

[4] The arguments made by the Parties in briefing Mr. Cardinale's Motion for Summary Judgment are virtually identical to the arguments made by the Parties in briefing the City's Motion.

a significant government interest, and leaves open ample alternative channels of communication." *Id.* (citing *Bloedorn v. Grube*, 631 F.3d 1218, 1236 (11th Cir. 2011) (citing *Perry*, 460 U.S. at 49)). Similarly, a designated public forum "consists of government property that has been opened up for the purpose of functioning, more or less, as a traditional public forum." *Barrett*, 872 F.3d at 1224. However, "unlike in a traditional public forum, expressive activity in a designated public forum can be limited to a particular class of speakers instead of being opened to the general public," but "once that designated public forum has been limited to that particular class, all members of that class must receive general access." *Id.* (citing *Ark. Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 677-80 (1998)).

In contrast and as relevant here, a limited public forum "exists where a government has 'reserved a forum for certain groups or for the discussion of certain topics.'" *Walker*, 576 U.S. at 215-16 (citing *Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995)). A limited public forum is not "open to the public at large for discussion of any and all topics" and "can be set up to grant only 'selective access' to the class for which it is reserved." *Barrett*, 872 F.3d at 1224. "Under a system of selective access, members of the class do not enjoy unhindered access to the forum; instead, each individual member must obtain permission from the governmental proprietor of the forum, who in turn has discretion to grant or deny permission." *Id.* "Indeed, implicit in the idea that a government forum has not been opened widely and intentionally to the general

public is the government's right to draw distinctions in access based on a speaker's identity." *Bloedorn*, 631 F.3d at 1235 (citing *Perry*, 460 U.S. at 49)).[5]

The Eleventh Circuit has held that public comment periods before a city council "are limited public fora—i.e., a forum for certain groups of speakers or for the discussion of certain subjects." *Rowe v. City of Cocoa, Fla.*, 358 F.3d 800, 802-03 (11th Cir. 2004) ("As a limited public forum, a city council meeting is not open for endless public commentary speech but instead is simply a limited platform to discuss the topic at hand.") (internal citations omitted); *Cleveland v. City of Cocoa Beach, Florida*, 221 Fed. Appx. 875, 878 (11th Cir. 2007); *Thomas v. Howze*, 348 Fed.Appx. 474, 478 (11th Cir. 2009). Similarly, public comment portions of schoolboard meetings fall into the category of limited public forums. *Barrett*, 872 F.3d at 1225. In accordance with this authority, the Court finds that the City's public comment period before the City Council and its Committees constitutes a limited public forum. The Court also notes that, in his surreply, Mr. Cardinale states that he agrees that "Atlanta City Council Meetings and Council Committee Meetings are limited public forums." (Pl. Surreply, Doc. 126-1 at 5.)

In a limited public forum, "a government entity may impose restrictions on speech that are reasonable and viewpoint neutral." *Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 470 (2009) (citing *Good News Club v. Milford Central School*, 533 U.S. 98, 106-107 (2001)); *see also, Keister*, 879 F.3d at 1289. Thus,

---

[5] The fourth category, a nonpublic forum, "refers to property at which the government 'acts as a proprietor, managing its internal operations." *Barrett*, 872 F.3d at 1225.

"ordinances regulating speech in limited public forums are not subject to strict scrutiny." *Sheets v. City of Punta Gorda, Florida*, 415 F.Supp.3d 1115, 1122 (M.D. Fla. 2019) (citing *Summum*, 555 U.S. at 469-470).

Mr. Cardinale, however, asks the Court to apply strict scrutiny to the policy at issue based on the Supreme Court's decision in *Reed v. Town of Gilbert*, 576 U.S. 155 (2015). In *Reed*, the Court addressed an Arizona town's sign code which prohibited the display of outdoor signs anywhere within the Town without a permit but exempted 23 categories of signs from the permit requirement. *Id.* at 159. There, the Court found that the Town's sign code "imposes content-based restrictions on speech" and reasoned that the provisions could "stand only if they survive strict scrutiny, which requires the Government to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest." *Id.* at 171 (internal citations omitted). On the record there, the Town of Gilbert failed to make such a showing. Mr. Cardinale argues that because the Court did not conduct a forum analysis in *Reed*, the Supreme Court's holding is not limited to any particular forum, and thus *Reed* effectively heightened the standard for limited public forums. (Pl. Surreply at 5-13; Pl. Mot. at 12-19.)

But *Reed* is not applicable here. *Reed* addressed the issue of government restrictions on the content of outdoor signs displayed by private citizens, not the issue of restrictions surrounding private speech *on government property*. *Reed*, 576 U.S. 159. As the Court explained in the decision of *Walker v. Tex. Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200 (2015) – released the same day as *Reed*

— courts use "what we have called 'forum analysis' to evaluate government restrictions on purely private speech that occurs on government property." *Id.* at 215 (but finding that forum analysis was not appropriate under the facts of that case). Indeed, Justice Kagan's concurrence in *Reed* specifically notes that the Court's application of strict scrutiny to content-based regulations that restrict discussions of an entire topic in a public debate applies "*except in non-public or limited public forums.*" *Reed*, 576 U.S. at 182 (Kagan, J., concurring) (emphasis added). Since *Reed*, the Supreme Court has referenced the limited public forum in *Matal v. Tam*, 137 S.Ct. 1744, 1763 (2017), explaining that "[w]hen government creates such a [limited public] forum . . . some content- and speaker-based restrictions may be allowed." In at least two published opinions since *Reed,* the Eleventh Circuit has applied the forum analysis and determined that the location at issue constituted a limited public forum. In both cases, the Court applied the lesser standard for limited public forums. *See Barrett*, 872 F.3d at 1224 (explaining that rules limiting public comment to issues of concern is "content-based discrimination, which is permitted in a limited public forum if it is viewpoint neutral and reasonable in light of the forum's purpose"); *Keister*, 879 F.3d at 1288 ("Limitations made in a limited public forum need only be 'reasonable and viewpoint neutral.'"). Further, any interpretation that *Reed* jettisoned the lesser "viewpoint neutral and reasonable" standard associated with limited public forums

would require that *Reed* have overturned decades of precedent[6] without saying so. The Court rejects this interpretation.

Accordingly, *Reed* and its strict scrutiny standard do not apply here. Instead, the Court evaluates the City's policy prohibiting individuals from mentioning their candidacy or incumbency status to determine if it is "viewpoint neutral and reasonable." *See, Summum*, 555 U.S. at 470; *Good News*, 533 U.S. at 106-107; *Barrett*, 872 F.3d at 1224; *Keister*, 879 F.3d at 1288.

### i.    Viewpoint Neutral

"A restriction on speech constitutes viewpoint discrimination 'when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction.'" *Jackson v. McCurry*, 762 Fed.Appx. 919, 930 (11th Cir. 2019) (citing *Rosenberger*, 515 U.S. at 829). Here, Mr. Cardinale has not argued that the City's policy discriminates based on viewpoint. Moreover, he does not dispute that the policy applies to "all candidates for public office, including incumbent candidates." (Pl. Resp. to City's Mot. at 16; *see also*, Stip. ¶¶ 3,4.) In a comparable yet somewhat-distinct case, the Eleventh Circuit determined that a policy establishing a campaign-free zone at city council meetings was viewpoint neutral because it applied "evenhandedly, and without regard to the particular candidate." *Cleveland*, 221 Fed.Appx. at 879. *See also, Bloedorn*, 631 F.3d at 1235 (finding that there was no evidence that GSU's ban on outside, non-sponsored speakers was viewpoint based as it applied equally to all non-sponsored speakers);

---

[6] *See e.g., Summum*, 555 U.S. at 470; *Good News*, 533 U.S. at 106-107.

*Cogswell v. City of Seattle*, 347 F.3d 809, 815-16 (9th Cir. 2003) (finding that city code provision prohibiting reference to political opponents in city voters' pamphlets was not viewpoint discriminatory).

Also significant here, the City emphasizes that Mr. Cardinale is not prohibited from making public comment and advocating for any change in policy that he may wish, for example, with respect to the enforcement of sign regulations or candidate disqualification processes. (City Mot. at 14) ("No evidence in the record shows that the Policy has prohibited or will prohibit Plaintiff from raising any concern about city business that he may have during his comments before the City Council."). Plaintiff does not argue that the City has or intends to prohibit him from speaking or raising the issues he has identified. Rather, he argues that depriving him of the ability to connect his policy concerns or grievances to his experience as a candidate dilutes the nature and power of his speech:

> It *matters* that Pl. be able to identify himself as a candidate when making those grievances, rather than being forced to make abstract, generalized comments that might state the subject matter of Pl.'s grievances in a theoretical, ungenuine way. Pl. knows from his extensive experience making public comments, that theoretical comments are not effective . . . It is Pl.'s right to determine for himself what petitioning his government for a redress of grievances means to him.

(Pl. Resp. to City. Mot. at 9; Pl. Mot. at 8.) The Court understands Plaintiff's perspective and his frustrations under the circumstances. Yet, as the City argues, and Mr. Cardinale does not dispute, there is no indication that he has or will be prohibited from making public comments regarding the subject matter of his

complaints. He is free to state his concern regarding, for instance, the sign ordinances. As the Court understands it, nothing prevents Mr. Cardinale from commenting that the lack of sign enforcement is bad policy, complaining that it encourages people to break the rules, or lamenting that it unfairly punishes rule-following candidates – all without disclosing his candidacy. Similarly, there is nothing that restricts Mr. Cardinale from indicating his overall view of the defects or inequities of the candidate disqualification and appeal process or proposing possible changes without explicitly stating that he is a candidate.[7] As the restriction applies across-the-board and does not restrict the substance of Mr. Cardinale's complaints, the Court finds that the restriction at issue is viewpoint neutral. *Cleveland*, 221 Fed.Appx. at 879; *Bloedorn*, 631 F.3d at 1235;

### ii.   Reasonableness

Next, the Court addresses whether the policy is reasonable. Reasonableness "must be assessed in the light of the purpose of the forum and all the surrounding circumstances." *Bloedorn,* 631 F.3d at 1231 (citing *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 809 (1985)). A restriction "need not be the most reasonable or the only reasonable limitation" in order to withstand a constitutional challenge. *Cornelius*, 473 U.S. at 809. And "the government has substantial leeway in determining the boundaries of limited public fora it creates." *Cogswell*, 347 F.3d at 817.

---

[7] Indeed, Mr. Cardinale may even be permitted to discuss his *past* experiences as a candidate in making these complaints. However, as it is unclear what the City's position is on referencing past-candidacy, the Court will not speculate.

The City first argues that the restriction here is reasonable because governments can prohibit discussion of "irrelevant" topics and that "a city council candidate's self-identification as a candidate is irrelevant to the only purpose of the forum, the administration of city business." (City Mot. at 12.) While a candidate's status might often, or even usually, be irrelevant to the administration of city business, the Court is not convinced that Mr. Cardinale's wish to identify himself as a candidate is entirely "irrelevant" under the circumstances. Mr. Cardinale's desire to disclose his status as a past and future candidate is directly related to — and indeed informs — his two specific complaints related to signage enforcement and candidate disqualification procedures. These two grievances, as framed, are relevant to "matters of public concern, including matters of general policy, efficiency, and the conduct of city government." Atlanta, Ga., Code of Ordinances § 2-104.

The City also argues that its restriction is reasonable and necessary to prohibit significant disruption of City Council and Committee meetings. (City Mot. at 13.) According to the City, allowing individuals to disclose their status would "be more likely to draw attention to their candidacies through their comments, which could disrupt the meeting at hand, and even lead to campaign-related debate amongst candidates, many of whom will likely be incumbent Council members." (*Id.*) Mr. Cardinale argues that disruption is not an issue, since a member of the public who has already signed up to speak or a councilmember wishing to respond to a previous speaker has a right to do so. (Pl. Resp. to City Mot. at 23-24.) In

addition, Mr. Cardinale contends that the City has other policies in place to prevent disruption. (*Id*.)

As noted above, reasonableness "must be assessed in the light of the purpose of the forum and all the surrounding circumstances." *Bloedorn,* 631 F.3d at 1231 (citing *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc*., 473 U.S. 788, 809 (1985). Here, the City maintains that the City Council and Committee meetings serve the purpose of conducting city business. (City Mot. at 10; City Resp. to Pl. Mot. at 10.)

The City relies heavily on *Cleveland,* which held that it was reasonable for the city to establish a campaign-free zone at council meetings "for the purposes of limiting political influence on its employees and conducting orderly and efficient meetings." 221 Fed.Appx. at 879. (citing *Rowe*, 358 F.3d at 800) (explaining that governments have a significant interest "conducting orderly, efficient meetings of public bodies"). The Court acknowledges that, here, Mr. Cardinale does not seek to engage in any explicit campaigning, as in *Cleveland*. However, the City's rationale, that allowing any disclosure and discussion of a speaker's status as a candidate or incumbent could be disruptive and lead to difficult "in the moment" decisions of the presiding council member, is reasonable.

Although Mr. Cardinale argues that members of the public and council members would have a right to respond to an individual's candidacy-related statement, this back-and-forth could create exactly the off-topic disorder the City seeks to prevent. Moreover, as Defendant argues, were the City to allow a speaker's

mention of his status as a candidate, it could be difficult for the presiding council member to determine when such a disclosure crossed the boundary into official "campaigning," which is undisputedly a permissible restriction. *See Cleveland*, 221 Fed.Appx. at 879. Allowing a presiding member to make instantaneous calls on whether a particular statement violates a no-campaigning policy could potentially open up the City to liability for unequal treatment or impermissible discretionary and arbitrary decisions of the presiding member.

Mr. Cardinale argues that the City has other measures in place to prevent disruption. But in a limited public forum, a restriction on speech need not "be the most reasonable or the only reasonable limitation," *Cornelius*, 473 U.S. at 805, 808. ("the Government need not wait until havoc is wreaked to restrict access to a nonpublic forum.") A restriction is valid so long as it is "reasonable in light of the purpose which the forum at issues serves." *Perry*, 460 U.S. at 49. *See also, Cogswell,* 347 F.3d at 817 (finding that a city code provision prohibiting reference to political opponents in city voter pamphlets was not unreasonable) ("Simply because [the plaintiff] or other candidates may feel that there are other more reasonable ways to regulate the voters' pamphlet does not render the restriction unreasonable."). Here, the City has reasonably determined that it will allow for citizen comments on matters before the City Council and Committees in allocated two-minute periods. It has also reasonably determined that allowing discussion of candidacy or incumbency during public comment could be disruptive to the business of the City.

"In light of the purpose of the forum and all the surrounding circumstances," the Court finds the City's policy prohibiting disclosure of a speaker's status as a candidate (whether or not the candidate is an incumbent) in public comment sessions to be "reasonable" under the flexible rubric established by governing case law.  Thus, because the City's restriction is viewpoint neutral and reasonable, the City is entitled to summary judgment on Mr. Cardinale's claims.[8]

### iii.    Prior restraint

Mr. Cardinale also argues in his response to the City's summary judgment motion and in his own summary judgment motion that the City's policy is a prior restraint. (Pl. Response to City Mot. at 11-13; Pl. Mot. at 9-12.) Plaintiff however includes no allegations regarding prior restraint in his Amended Complaint. (Doc. 3-2.) Moreover, there are no facts to support that the restriction in question is a prior restraint. "A prior restraint on expression exists when the government can deny access to a forum for expression before the expression occurs." *United States v. Frandsen*, 212 F.3d 1231, 1236-37 (11th Cir. 2000) (finding an unconstitutional prior restraint where a National Park Service licensing scheme gave park official unlimited time frame in which to grant or deny permits to protest in park). Classic examples of prior restraint include permitting ordinances and licensing

---

[8] Mr. Cardinale has asserted both a facial and as applied challenge to the City's policy. As the Court finds that the City's policy is not unconstitutional as applied to Mr. Cardinale, Mr. Cardinale cannot show that the policy is facially unconstitutional because "[a] plaintiff can only succeed in a facial challenge by establishing that no set of circumstances exists under which the [policy] would be valid, *i.e.*, that the [policy] is unconstitutional in all of its applications." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008). Accordingly, summary judgment in favor of the City is warranted on both counts.

ordinances. *Barrett*, 872 F.3d at 1223 (internal citations omitted). "Prior restraints contrast with 'subsequent punishments,' which regulate a given type of speech by penalizing the speech only *after* it occurs." *Id.* (citing *Alexander v. United States*, 509 U.S. 544, 550 (1993)). As Defendant notes, Plaintiff has not alleged nor argued that the City prevented Mr. Cardinale from speaking at any City Council or Committee meeting in connection with his desire to identify himself as a candidate. There is also no record evidence to indicate that the City denied Mr. Cardinale the opportunity to make public comment before any comment occurred. Consequently, there is no evidence that the City's policy prohibiting an individual from disclosing his candidacy is a prior restraint.

## IV.   Conclusion

As noted above, Defendant's Motion for Hearing [Doc. 132] is **DENIED** and Plaintiff's Motion for Leave to File Surreply [Doc. 126] is **GRANTED**.  Because the City's policy is viewpoint neutral and reasonable, it does not violate the First Amendment facially or as applied to Mr. Cardinale. The policy also does not constitute a prior restraint. Accordingly, Defendant's Motion for Summary Judgment [Doc. 113] is **GRANTED**, and Plaintiff's Motion for Summary Judgment [Doc. 145] is **DENIED**.  The Court **ENTERS** judgment in favor of Defendant and against Plaintiff. The Clerk is **DIRECTED** to close this case.

**IT IS SO ORDERED** this 25th day of February, 2021.

**Honorable Amy Totenberg**
**United States District Judge**